**IN THE UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF ARKANSAS**
**NORTHERN DIVISION**

| | |
|---|---|
| **IN RE:  CHARLES JORDAN HYLLE,** | **Case No. 3:19-bk-16624** |
| | **(Chapter 7)** |
| **Debtor.** | |
| **FARM CREDIT SERVICES OF AMERICA, PCA** | **PLAINTIFF** |
| **V.**          **AP Case No. 3:20-ap-01022** | |
| **CHARLES JORDAN HYLLE** | **DEFENDANT** |

| | |
|---|---|
| **IN RE:  MATTHEW STEPHEN HYLLE,** | **Case No. 3:19-bk-16625** |
| | **(Chapter 7)** |
| **Debtor.** | |
| **FARM CREDIT SERVICES OF AMERICA, PCA** | **PLAINTIFF** |
| **V.**          **AP Case No. 3:20-ap-01023** | |
| **MATTHEW STEPHEN HYLLE** | **DEFENDANT** |

## <u>MEMORANDUM OPINION</u>

Farm Credit Services of America, PCA ("**Farm Credit**"), as the servicer for AgDirect Farm Credit Services, initiated separate actions against Charles Jordan Hylle ("**Jordan Hylle**") (AP Case No. 3:20-ap-1022) and Matthew Stephen Hylle ("**Matthew Hylle**") (AP Case No. 3:20-ap-1023) (collectively the "**Defendants**") alleging that the obligations the Defendants owe to Farm Credit should be determined to be nondischargeable or, alternatively, that their respective discharges should be denied.  The allegations against both Defendants focus on the

alleged unauthorized disposition of collateral and the failure of the Defendants to pay Farm Credit the sale proceeds of collateral sold. Both Defendants responded stating that the relief sought by Farm Credit is not supported by the evidence and should be denied.

A consolidated trial on the merits was held in Jonesboro, Arkansas, on September 21–22, 2021. R. Bryant Marshall and Kyle Singleton of R. Bryant Marshall, Attorney, PLLC, appeared on behalf of Farm Credit. Joel Hargis and Emily J. Henson of the Caddell Reynolds Firm appeared on behalf of the Defendants. Farm Credit and the Defendants consented to this Court entering final orders or judgments in the proceedings. At the conclusion of the trial, the Court took the matters under advisement.

## I. Jurisdiction

The Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 1334 and 157. These are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(I) and (J). The following shall constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## II. Procedural Background

Farm Credit is the plaintiff in both the above-referenced adversary proceedings. Jordan Hylle is the defendant in one adversary proceeding, and his brother, Matthew Hylle, is the defendant in the other. On motion of the plaintiff, the two adversary proceedings were consolidated for the purpose of trial. The relevant procedural background for the bankruptcy cases, and adversary proceedings for each defendant, will be presented separately below.

### A.  Farm Credit vs. Jordan Hylle (AP No. 3:20-ap-1022)

Jordan Hylle filed a voluntary petition for relief under the provisions of Chapter 7 of the United States Bankruptcy Code on December 14, 2019.[1]  (Case No. 19-16624, Doc. No. 1). About a month later, Farm Credit filed a motion for relief from stay seeking termination of the automatic stay as to eight pieces of farm equipment and seeking to have the equipment abandoned from the estate.  (Case No. 19-16624, Doc. No. 9).  On February 5, 2020, an order was entered granting Farm Credit relief from stay and abandoning the eight pieces of farm equipment from the estate.  (Case No. 19-16624, Doc. No. 26).

Farm Credit timely filed this adversary proceeding on May 1, 2020, after obtaining an extension of time to do so.  (Case No. 19-16624, Doc. Nos. 50, 58; AP No. 20-1022, Doc. No. 1).  The original complaint was amended December 4, 2020, and amended a second time on August 18, 2021 (the "**Amended Complaint**").  (AP No. 20-1022, Doc. No. 105).  The causes of action contained in the Amended Complaint seek relief against Jordan Hylle under 11 U.S.C. § 523(a)(6) and 11 U.S.C. § 727(a)(5).[2]

In summary, Farm Credit alleges that Jordan Hylle pledged certain equipment for loans he entered into with Farm Credit, he defaulted under the loans by failing to make payments when due, and he has sold or otherwise disposed of the equipment pledged as collateral.  Farm Credit alleges that the sale of its collateral by Jordan Hylle violates the terms of the loan documents

---

[1] The Court takes judicial notice of the docket and documents filed in Jordan Hylle's bankruptcy case (Case No. 3:19-bk-16624) and the docket and documents filed in this adversary proceeding against Jordan Hylle (AP No. 3:20-ap-1022).  FED. R. EVID. 201.

[2] The Amended Complaint also includes a cause of action for conversion against Helena Agri-Enterprises, LLC. Prior to the trial, Helena Agri-Enterprises, LLC was dismissed with prejudice by stipulation filed September 10, 2021.  In addition, although the prayer for relief in the Amended Complaint includes a reference to 11 U.S.C. § 523(a)(4), the Amended Complaint does not contain a separate count for this subsection, and Farm Credit did not present argument or evidence of this subsection at trial.  The Court therefore finds that Farm Credit abandoned any cause of action under 11 U.S.C. § 523(a)(4) as to Jordan Hylle.  *See Gulfcoast Workstation Corp. v. Peltz (In re Bridge Info. Sys., Inc.)*, 460 F.3d 1041, 1047 (8th Cir. 2006).

and, as a consequence of the unauthorized disposal of the collateral, Farm Credit has been injured by Jordan Hylle's actions.  The Amended Complaint further alleges that Jordan Hylle knew his conduct was substantially certain to cause harm to Farm Credit and was willful and malicious.  The Amended Complaint seeks to have the debt Jordan Hylle owes to Farm Credit determined to be nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

Farm Credit's Amended Complaint also alleges that by disposing of Farm Credit's collateral without consent and without paying the sale proceeds to Farm Credit, there is a loss of assets to meet his liabilities.  It alleges that Jordan Hylle has failed to satisfactorily explain "when, how and for what consideration, if any, he disposed of the equipment."  (Am. Compl. ¶ 16).  Based on these allegations, Farm Credit seeks to have Jordan Hylle's discharge denied pursuant to 11 U.S.C. § 727(a)(5).

In his answer to the Amended Complaint, Jordan Hylle denies the allegations that he sold equipment in violation of the terms of the security agreement with Farm Credit, denies that Farm Credit has been injured by his actions, and denies that his actions were willful and malicious.  He further denies there was a loss of assets to meet his liabilities, or that he has failed to satisfactorily explain the disposition of collateral.

### B.  Farm Credit vs. Matthew Hylle (AP No. 3:20-ap-1023)

Matthew Hylle also filed his voluntary petition for relief under the provisions of Chapter 7 of the United States Bankruptcy Code on December 14, 2019.[3]  (Case No. 19-16625, Doc. No. 1).  About a month later, Farm Credit filed a motion for relief from stay seeking termination of the automatic stay as to five pieces of farm equipment and seeking to have the

---

[3] The Court takes judicial notice of the docket and documents filed in Matthew Hylle's bankruptcy case (Case No. 3:19-bk-16625) and the docket and documents filed in this adversary proceeding against Matthew Hylle (AP No. 3:20-ap-1023).  FED. R. EVID. 201.

4

equipment abandoned from the estate.  (Case No. 19-16625, Doc. No. 14).  On February 5, 2020, an order was entered granting Farm Credit relief from stay and abandoning the five pieces of farm equipment from the estate.  (Case No. 19-16625, Doc. No. 29).

Farm Credit timely filed this adversary proceeding on May 1, 2020, after obtaining an extension of time to do so.  (Case No. 19-16625, Doc. Nos. 53, 61; AP No. 20-1023, Doc. No. 1).  The original complaint was amended June 8, 2020 (the "**Complaint**").  (AP No. 20-1023, Doc. No. 5).  The causes of action contained in the Complaint seek relief against Matthew Hylle under 11 U.S.C. § 523(a)(6), 11 U.S.C. § 523(a)(4), and 11 U.S.C. § 727(a)(5).

Similar to the Amended Complaint against Jordan Hylle, in this second adversary proceeding, Farm Credit alleges that Matthew Hylle pledged certain equipment for a loan he entered into with Farm Credit, he defaulted on the loan by failing to make payments when due, and he has sold or otherwise disposed of the equipment he pledged as collateral.  Farm Credit alleges that the sale of its collateral by Matthew Hylle violates the terms of the loan documents and, as a consequence of the unauthorized disposal of the collateral, Farm Credit has been injured by Matthew Hylle's actions.  The Complaint further alleges that Matthew Hylle knew his conduct was substantially certain to cause harm to Farm Credit and was willful and malicious. The Complaint seeks to have the debt Matthew Hylle owes to Farm Credit determined to be nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

In addition, in Count II of the Complaint, Farm Credit alleges that Matthew Hylle participated in the sale of the collateral *Jordan Hylle* pledged to Farm Credit and argues it is entitled to judgment for the fair market value of the collateral "converted" by Matthew Hylle, which judgment should be determined to be nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

The Complaint, in Count III, alleges that Matthew Hylle was a proprietor, shareholder, officer, or member of Black Dirt Farms and other farming operations and in those capacities controlled the deposits, disbursement of funds, and assets owned by himself and Jordan Hylle. Farm Credit then alleges that Matthew Hylle authorized the sale of Farm Credit's collateral without paying the proceeds to Farm Credit, a breach of Matthew Hylle's fiduciary duties to Farm Credit. Farm Credit asserts that Matthew Hylle's actions amount to fraud and defalcation while acting in a fiduciary capacity and seeks to have its debt determined nondischargeable pursuant to 11 U.S.C. § 523(a)(4).

Finally, also similar to the allegations made against Jordan Hylle, Farm Credit's Complaint alleges that by disposing of Farm Credit's collateral without consent and without paying the sale proceeds to Farm Credit, there is a loss of assets to meet Matthew Hylle's liabilities. It alleges that Matthew Hylle has failed to satisfactorily explain the loss or deficiency of assets to meet his liabilities. Based on these allegations, Farm Credit seeks to have Matthew Hylle's discharge denied pursuant to 11 U.S.C. § 727(a)(5).

In his answer, Matthew Hylle admits that Farm Credit did not authorize him to sell a certain draper header and admits that the sale proceeds from the draper header were not paid to Farm Credit. He denies these actions amount to a willful and malicious injury to Farm Credit. Matthew Hylle also admits that he knew of Farm Credit's security interest in collateral pledged by Jordan Hylle and that he permitted the equipment to be sold at auction. Matthew Hylle again denies that his actions amount to a willful and malicious injury to Farm Credit.

As to Count III, Matthew Hylle admits that he is a partner of Black Dirt Farms but states Jordan Hylle is the managing partner. Matthew Hylle here denies that he authorized the sale of Farm Credit's collateral or that any of his actions amounted to fraud or defalcation while acting

in a fiduciary capacity.  He also denies the allegation that he has failed to satisfactorily explain the loss of assets to meet his liabilities.

### III.  Facts

The Hylle family had two farming operations.  David Hylle and Sylvia Hylle, the parents of Jordan Hylle, Matthew Hylle, and Jonathan Hylle, were involved in the David Hylle Farms Partnership ("**David Hylle Farms**").  Jordan Hylle, Matthew Hylle, Jonathan Hylle, and Jonathan's wife Milena were involved in the Black Dirt Farms Partnership.  Most of the Hylles worked in the fields.  Sylvia Hylle handled the bookkeeping for both farming operations. Decisions about the farming operations were discussed by the members of the family.  Farm equipment was shared by all the Hylles in the two farming operations.  An inventory list of farm equipment signed by David Hylle Farms, David Hylle, and Sylvia Hylle dated February 26, 2016, was introduced into evidence and reflects 115 items of equipment.  (Ex. G).[4]  The Hylles sold some equipment in 2016 to pay down the farming debt obligations.

Also in 2016, David Hylle Farms "sold" seven pieces of equipment to Jordan Hylle as reflected in a bill of sale dated May 26, 2016 (the "**Bill of Sale**").  (Ex. B).  The Bill of Sale reflects Jordan Hylle's signature as the buyer but does not reflect a signature for David Hylle Farms as the seller.[5]  Jordan Hylle's signature is notarized, but he testified that he did not sign the document in front of a notary.  According to David Hylle's testimony, the Bill of Sale was made to "spread" the farm debt around.  (I Tr. at 144).  On the same date the Bill of Sale was

---

[4] All exhibits introduced at trial were introduced by the plaintiff; no additional designation will be made in referencing exhibits throughout this opinion.

[5] Because the seller, David Hylle Farms, did not sign the Bill of Sale, the Court questions whether its interest in the seven pieces of equipment was ever conveyed to Jordan Hylle.  If Jordan Hylle did not have rights in the equipment or power to transfer rights in the equipment to a secured party, then Farm Credit's security interest never attached to the equipment.  *See* ARK. CODE ANN. § 4-9-203 (2020) (one of the prerequisites for attachment of a security interest is that the "debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party.").  However, this issue was not raised at trial, and the Court will not consider it *sua sponte*.

signed, Jordan Hylle obtained two loans from Farm Credit totaling $241,500.00.  The total value of the equipment "sold" pursuant to the Bill of Sale was also $241,500.00.  David Hylle testified that he received no money from the "sale" of the equipment; rather, he believed the Bill of Sale was executed to "do some refinancing."  (I Tr. at 144).  Even after the Bill of Sale was signed, David Hylle believed he still owned the equipment because he was never paid for it.  At the hearing, Mike Spence, a litigation officer with AgDirect Farm Credit Services, testified that Farm Credit required the Bill of Sale for Jordan Hylle's two loans.

In February 2018, the Hylles sold equipment to reduce their farm debt to obtain financing for their 2018 farming operations.  Before the 2019 planting season, around April 2019, the landlord for the land the Hylles used for farming told the Hylles they could no longer use the land.  The Hylles could not find any other land to farm, so the family discussed discontinuing the farming operations and selling all the farm equipment.  David Hylle testified that after they lost their land, "companies called in notes" and started sending notices.  (I Tr. at 149).  The remaining equipment was sold at two auctions: one held in July 2019 and another in December 2019.  According to the evidence introduced at trial, at the time the farming operations were discontinued, Jordan Hylle had two loans outstanding with Farm Credit and Matthew Hylle had one.  The disposition of the collateral for these loans is at the center of the controversy before the Court.

### A.  Description of Loans

Most of the facts surrounding the three loans are not in dispute.  Mr. Spence described the promissory notes, security documents, and payment histories.  His testimony, along with other testimony concerning the three loans, is summarized below.

8

### (1) Loan No. 3036134 (Jordan Hylle)

Loan No. 3036134 ("**Loan 6134**") is in the name of Jordan Hylle.  He signed a

promissory note and loan agreement dated May 26, 2016, in favor of Farm Credit.  (Ex. A, at 1).

The original principal amount of the note was $100,000.00 to be paid in five annual installments

beginning June 1, 2017.  The agreement included provisions for charging late fees and legal fees

in the event of default.  An event of default included failure to make a payment when due; Mr.

Spence testified that a default occurred when the 2019 annual payment was not made.  The

amount due on Loan 6134 as of September 13, 2021, including all costs and fees allowed by the

loan documents was $96,565.55.

To secure the repayment of the note, Jordan Hylle also signed a security agreement

granting a security interest in a Case IH 305 Tractor with the serial number reflected as

Z7R732514 (the "**Disputed Tractor**"), along with two Great Plains 2420 Drills, Serial Nos.

SWFF1050 and SWFF1055 (the "**Drills**").  (Ex. A, at 5).  Mr. Spence testified that the serial

numbers for the Disputed Tractor and the Drills listed on the security agreement were obtained

from the Bill of Sale.  The security agreement contained a provision that Jordan Hylle would not

sell or dispose of the collateral without applying all proceeds from the disposition of the

collateral to Loan 6134 within ten days.

To perfect its security interest in the collateral, Farm Credit filed a UCC-1 financing

statement with the Arkansas Secretary of State's office.  (Ex. A, at 8).  The debtor's name on the

UCC-1 is reflected as "Hylle, Charles Jordan."  (Ex. A, at 8).

At the time Loan 6134 and Loan 6137 (discussed below) were made with Jordan Hylle,

Farm Credit entered into a subordination agreement with Helena Agri-Enterprises, LLC

("**Helena Chemical**"), allowing Farm Credit's lien position to be superior to that of Helena

Chemical for the collateral related to Jordan Hylle's loans.  The subordination agreement is dated May 26, 2016.  Neither of the Defendants are parties to the subordination agreement, and Mr. Spence was not certain if a copy of the subordination agreement was sent to the Defendants. Jordan Hylle testified that he had never seen the subordination agreement.

Jordan Hylle does not dispute that he signed the loan documents and had responsibilities under the loan documents; however, he testified that his role on the farm was "work[ing] in the field," and that he was never the one to write checks on behalf of the farming operation.  (II Tr. at 47).

### (2) Loan No. 3036137 (Jordan Hylle)

Loan No. 3036137 ("**Loan 6137**") is also in the name of Jordan Hylle.  He signed a second promissory note and loan agreement dated May 26, 2016, in favor of Farm Credit. (Ex. C, at 1).  The original principal amount of the second note was $141,500.00 to be paid in five annual installments beginning June 1, 2017.  The agreement also included provisions for charging late fees and legal fees in the event of default.  An event of default included failure to make a payment when due; Mr. Spence testified that a default occurred when the 2019 annual payment was not made.  The amount due on Loan 6137 as of September 13, 2021, including all costs and fees allowed by the loan documents was $2,133.64.

To secure the repayment of the second note, Jordan Hylle signed a security agreement granting a security interest in a DMI Tigermate II Field Cultivator (the "**DMI Tigermate II Cultivator**"), a Case IH 285 Tractor, a Case 550H Dozer, and a Case 580 Super M Backhoe. (Ex. C, at 5).  The security agreement contained a provision that Jordan Hylle would not sell or dispose of the collateral without applying all the proceeds from the disposition of the collateral to Loan 6137 within ten days.

10

To perfect its security interest in the collateral, Farm Credit filed a UCC-1 financing statement with the Arkansas Secretary of State's office. (Ex. C, at 8). The debtor's name on the UCC-1 is reflected as "Hylle, Charles Jordan." (Ex. C, at 8). A UCC financing statement amendment was filed on July 12, 2017, to change the collateral description by deleting the Case IH 285 Tractor from the filing. (Ex. C, at 9).

As stated above, at the time Loan 6137 was made, Farm Credit entered into a subordination agreement with Helena Chemical allowing Farm Credit's lien position to be superior to that of Helena Chemical for the collateral related to this loan.

Jordan Hylle does not dispute that he signed the loan documents and had responsibilities under the loan documents; however, he testified that the sale proceeds from the equipment auctions went directly to his parents, and Sylvia Hylle decided what bills or loans were paid without discussing the decisions with him. He testified that he did not intend for Farm Credit to not be paid and pointed out the annual payments on the Farm Credit loans were made until he defaulted in 2019.

### (3) Loan No. 3031165 (Matthew Hylle)

The third loan, Loan No. 3031165 ("**Loan 1165**"), is in the name of Matthew Hylle. He signed a promissory note and loan agreement dated April 25, 2016, in favor of Farm Credit. (Ex. F, at 1). The original principal amount of the note was $194,505.08 to be paid in five annual installments beginning May 1, 2017. The agreement also included provisions for charging late fees and legal fees in the event of default. An event of default included failure to make a payment when due; Mr. Spence testified that a default occurred when the annual payment was not made in 2019. The amount due on Loan 1165 as of September 13, 2021, including all costs and fees allowed by the loan documents was $14,689.26.

11

To secure the repayment of the note, Matthew Hylle signed a security agreement granting a security interest in a Case IH 9120 Combine, Soucy BT1000 Tracks for Combine, and a Honey Bee SP30 Draper Head (the "**Honey Bee Draper Header**").  (Ex. F, at 5).  The security agreement contained a provision that Matthew Hylle would not sell or dispose of the collateral without applying all the proceeds from the disposition of the collateral to Loan 1165 within ten days.

To perfect its security interest in the collateral, Farm Credit filed a UCC-1 financing statement with the Arkansas Secretary of State's office.  (Ex. F, at 8).  The debtor's name on the UCC-1 is reflected as "Hylle, Matthew Stephen."  (Ex. F, at 8).

Matthew Hylle does not dispute that he signed the loan documents and had responsibilities under the loan documents; however, he testified that his parents were the ones who took care of all the liabilities of the farming operations.  He admitted at his deposition that his parents taking care of the business side of the farming operations did not excuse him from his liabilities under the loan documents.  He admitted he defaulted on his obligations with Farm Credit, as well as his other creditors, and has breached his contracts with Farm Credit.  As discussed at trial, at his deposition he testified that he did not intend for Farm Credit to not be paid, and pointed out that annual payments were made until the farming operations were discontinued in 2019.

### B.  Disposition of Collateral

The real dispute among the parties centers around the disposition of five pieces of collateral.  As to collateral pledged by Jordan Hylle, Farm Credit repossessed the Case IH 285 Tractor, the Case 550H Dozer, and the Case 580 Super M Backhoe, but was unable to repossess the Disputed Tractor, the Drills, and the DMI Tigermate II Cultivator.  As to the collateral

12

pledged by Matthew Hylle, Mr. Spence testified that he believes Matthew Hylle either sold the Case IH 9120 Combine and Soucy BT1000 Tracks for Combine to someone else or refinanced them with a different entity.[6]  However, he was unaware of the disposition of the Honey Bee Draper Header.  This leaves five pieces of collateral in dispute: the Disputed Tractor, the two Drills, the DMI Tigermate II Cultivator, and the Honey Bee Draper Header.

### (1) The Auctions

The parties discussed four different auctions during the trial where farm equipment was sold: the Witcher Auction held November 7, 2016 (the "**Witcher Auction**"); the Dewitt Auction held February 26, 2018 (the "**Dewitt Auction**"); and two auctions with BigIron Auctions, one held July 10, 2019, and the second held December 4, 2019.  The evidence revealed that all auction sale proceeds, with the exception of proceeds from the final auction, were sent to David Hylle Farms and would have been handled by Sylvia Hylle.  It was Sylvia Hylle who decided what bills or loans were paid with sale proceeds.  The evidence related to each of the four auctions is summarized below.

### (a)  _Witcher Auction – November 7, 2016_

The Witcher Auction was held by Witcher Auctions on November 7, 2016.  David Hylle selected the pieces of equipment to sell at the auction, Jordan Hylle loaded the equipment to be transported to the auction, and Matthew Hylle transported the pieces to Witcher Auctions to be

---

[6] The combine and tracks pledged as collateral for Loan 1165 were not included in Farm Credit's Complaint against Matthew Hylle.  It appears to the Court that Farm Credit does not take issue with Matthew Hylle's disposition of the combine and tracks.  Even if it did, however, the little evidence adduced at trial concerning this collateral would fail to prove that Farm Credit was injured by the disposition, much less that the injury was willfully and maliciously inflicted.  Mr. Spence testified that Farm Credit was notified in 2016 or 2017 that Matthew Hylle either sold or refinanced the combine and tracks.  No evidence was introduced to suggest the sale proceeds from the sale or refinancing were not paid to Farm Credit as required under the terms of the security agreement.  In fact, although not conclusive, the Court notes a special payment was made on Loan 1165 in October 2017, reducing the principal balance of the loan from $158,226.24 to $6,364.29.  To the extent, therefore, Farm Credit does take issue with the disposition of the combine and tracks, it failed to prove an injury from the disposition, or that the injury was willfully and maliciously inflicted by Matthew Hylle.

13

checked in.  The consignor settlement sheet dated November 7, 2016, reflects that a Great Plains 2420 20' 3pt Grain Drill, Serial No. GP FF1055 and a Great Plains 2420 20' 3pt Grain Drill, Serial No. GP FF1056 were each sold for $1,000.00.  (Ex. O).  Two drills are reflected on the inventory list initialed by David Hylle and Sylvia Hylle.  One of the serial numbers matches a drill sold at the Witcher Auction (Serial No. FF1055); the other has a Serial No. of FF1050 instead of FF1056.  Two drills are also listed on the Bill of Sale as equipment being sold by David Hylle Farms to Jordan Hylle.  Similar to the inventory list, one of the serial numbers on the Bill of Sale matches a drill sold at the Witcher Auction (Serial No. FF1055); the other has a Serial No. of FF1050 instead of FF1056.  The serial numbers on the security agreement for Loan 6134 match the inventory list and the Bill of Sale.

### (b) *Dewitt Auction – February 26, 2018*

David Hylle explained that AG Resource Management ("**ARM**") was financing the farming operations and financing from ARM was necessary for the Hylles to be able to continue farming.  ARM suggested that if the farming operating debts were reduced, it would continue financing the operations.  To reduce their debt obligations, the Hylles decided to sell some of their farming equipment at Dewitt Auction Company.

Brandon Dewitt, Vice President of Dewitt Auction Company, testified about the open consignment auction he conducted on February 26, 2018, for David Hylle Farms.  The auction included a "DMI Field Cultivator" that sold for $3,500.00 and a Case 305 tractor that sold for $56,000.00.  (Ex. I).  Mr. Dewitt was not present when the equipment was delivered to the auction.  He testified that someone brought the equipment to the Dewitt Auction and listed it with the auction coordinator at the sale.  He explained that "this equipment showed up at the site. It was checked in.  But I don't know that we knew who[se] it was."  (I Tr. at 89).  When asked

14

why serial numbers were not contained on the settlement sheet for the Dewitt Auction, Mr. Dewitt explained that Dewitt Auction Company does not typically put serial numbers on its settlement sheets as there is a limited amount of space and they are often working under limited time constraints.  In addition, because the items came into the auction after the advertising period, Dewitt Auction Company did not collect much information on the items.

Matthew Hylle recalled that David Hylle told him they were going to have to "sell off some equipment to satisfy some debt with Helena Chemical so [they] could keep farming another year."  (I Tr. at 202).  David Hylle testified that he was the one who chose Dewitt Auction Company for the sale and decided what equipment was to be sold.  After David Hylle selected the equipment to be sold, he and his three sons took the equipment to the auction site.  Matthew Hylle's testimony was consistent with David Hylle's description of how the equipment was selected and delivered.

It is Dewitt Auction Company's practice to determine whether equipment being sold is encumbered by liens.  This is done by conducting independent lien searches and by asking the owner for the lien status.  In this case, the equipment was checked into the auction under the name "David Hylle Farms" so Mr. Dewitt ran lien searches on David Hylle Farms, David Hylle, and any related aliases that might have appeared during his search.  The lien search was not admitted into evidence.

Mr. Dewitt testified that when the lien search uncovered UCC financing statements with the collateral description "equipment," he contacted Matthew Hylle and asked him if there were any liens on the equipment.  Mr. Dewitt testified that Matthew Hylle told him there were no liens on the equipment, and he provided Dewitt Auction Company with some lien releases.  The releases included ones emailed from Hylle@IPA.net for CNH that Mr. Dewitt received from

15

"Mr. Hylle or somebody." (I Tr. at 93). There was also evidence of liens that had been terminated for Farm Credit Midsouth. Mr. Dewitt did not testify whether a lien search was made in the name of Jordan Hylle or Matthew Hylle, or whether the lien search revealed a UCC filing by Farm Credit in the name of Jordan Hylle or Matthew Hylle. Mr. Dewitt testified that he "suspects" Matthew Hylle would have been the person who gave him permission to sell equipment, but he does not recall Matthew Hylle giving express permission to do so.

Contrary to Mr. Dewitt's testimony, Matthew Hylle testified that the person responsible for communicating with Dewitt Auction Company was his brother, Jonathan Hylle. Matthew Hylle stated that he did not communicate with Mr. Dewitt and did not tell him there were no liens on the property. He also testified that he was not aware of the nature of liens until he was trained at BigIron Auctions. He further testified that he only talked with Mr. Dewitt one time and that was after the bankruptcy was filed. In this conversation, Matthew Hylle said Mr. Dewitt had been contacted by Farm Credit and was upset with Matthew Hylle for not telling him about liens with Farm Credit. He told Mr. Dewitt at the time that he did not know about the liens. Matthew Hylle further explained that all the bookkeeping was done by Sylvia Hylle and he was not aware of what loans were paid so he would not have known if the loans to Farm Credit had been paid.

When items sold are encumbered by liens, Dewitt Auction Company makes the settlement check payable to the owner and the lienholder. After being told there were no liens on the property, a settlement check for the net sale proceeds of $123,945.75 was made payable to David Hylle Farms and mailed to David and Sylvia Hylle's home address in Wynne, Arkansas.

Consistent with Matthew Hylle's testimony concerning the reason for the sale of equipment, Sylvia Hylle paid sale proceeds to Helena Chemical to reduce the debt so ARM would continue financing the farming operations.

### (c)  BigIron Auction – July 10, 2019

After the Hylles discontinued their farming operations, Matthew Hylle went to work with the Cross County Sheriff's Department for a while and later, at the end of July 2019, began working for BigIron Auctions.  BigIron Auctions conducted an auction that included some farm equipment identified as David Hylle Farms' equipment on July 10, 2019.  Specifically, the auction included two Honey Bee SP30R draper headers.[7]  Matthew Hylle was not involved with the July 2019 auction.  He testified that he did not know about the auction until months after it was held, as he was working for the sheriff's office at the time.

Matthew Hylle testified about the selling process BigIron Auctions uses in its operations. It begins with BigIron Auctions obtaining information from the seller including the seller's information, lienholders, and names for conducting UCC lien searches.  The equipment is then inspected and photographed.  UCC searches are run to determine lienholders and if a lienholder is discovered, the seller is contacted so the seller can decide how to handle the lien with the lienholder.

### (d)  BigIron Auction – December 4, 2019

Matthew Hylle was still working at BigIron Auctions in December 2019.  On December 4, 2019, an auction was conducted that included farm equipment listed for David Hylle Farms.  Matthew Hylle was involved with this auction.  He testified that they were selling

---

[7] Although not explicitly argued at the hearing, the Court notes that neither of the serial numbers listed on the settlement sheet match the serial number for the Honey Bee Draper Header pledged by Matthew Hylle. The serial numbers for the draper headers sold at the July 10, 2019 auction are listed as: 30RB091440 and 300500219. The Honey Bee Draper Header pledged by Matthew Hylle is listed as having a serial number of 30RB091434.

17

the rest of the farm equipment because their lender, Evolve Bank, wanted the "rest of their equipment sold." (I Tr. at 186).

The settlement statement reflects that a Case 305 tractor was sold at the auction for $42,500.00 and the net sale proceeds were $39,950.00, which were sent to Evolve Bank. (Ex. L). The serial number for the tractor is not listed on the settlement statement. Matthew Hylle was later able to determine the serial number for the tractor sold at this auction and testified that it was Z7RZ06929.

### *(2) Evidence Presented on Collateral*

For clarity in determining the disposition of the five pieces of collateral in dispute, the Court will now separately discuss the evidence presented as to each piece of collateral.

### *(a) Disputed Tractor*

The evidence regarding the Disputed Tractor presents two very different positions. Jordan Hylle, Matthew Hylle, and David Hylle all testified unequivocally that only three Case 305 tractors ever existed. Jordan Hylle and Matthew Hylle both testified that they named the three tractors and referred to them as "Gertrude," "Belly," and "Lightning." Farm Credit argues that there is evidence of three Case 305 tractors being sold, none of them had Serial No. Z7R732514 (the serial number reflected on the security agreement for the Case 305 tractor pledged on Loan 6134), so there must have been four Case 305 tractors and the Disputed Tractor is the one unaccounted for and missing.

Consistent with the Hylles' testimony, only three Case 305 tractors are listed on the inventory list dated February 26, 2016, for David Hylle Farms; those tractors are listed with serial numbers Z7RZ06930, Z8RZ02610, and Z7R732514 (the Disputed Tractor). The inventory list was initialed by David Hylle and Sylvia Hylle. Counsel for the Defendants asked Mr.

18

Spence to read the first four numbers of the serial numbers on the inventory list.  The Disputed Tractor was the only serial number without a "Z" in the fourth position.

In addition to these three serial numbers, there was also evidence of a fourth serial number, Serial No. Z7RZ06929, associated with the Case 305 tractor sold by BigIron Auctions on December 4, 2019.  Evidence related to each of the four serial numbers will be discussed separately below.

### i.  Serial No. Z7RZ06930

As discussed above, David Hylle Farms sold a Case 305 tractor at the Dewitt Auction on February 26, 2018.  Moody Equipment Company was the purchaser of the tractor and its representative, Alex Moody, testified that he purchased a Case 305 tractor, Serial No. Z7RZ06930 at the auction.  The purchase price paid by Moody Equipment Company was $56,000.00.

As also discussed above, David Hylle explained that the proceeds were paid to Helena Chemical, their largest creditor, to reduce the farming debt obligations in order to be able to continue obtaining financing from ARM.  After reducing the debt to Helena Chemical, ARM agreed to continue financing for the 2018 crop year and the Hylles were able to continue farming.

This Case 305 tractor being sold at the Dewitt Auction is also consistent with David Hylle's handwritten notes made postpetition stating: "1 Case 305 tractor sold by Dewitt." (Ex. H).  Matthew Hylle testified that this tractor was the one given the name "Lightning."

### ii.  Serial No. Z8RZ02610

There was evidence that the Case 305 tractor, Serial No. Z8RZ02610, was tendered by Jordan Hylle to Farm Credit.  After Farm Credit took possession of this tractor it was taken to

Heartland Equipment, Inc. ("**Heartland**").  Heartland performed routine maintenance on the tractor and prepared other collateral for sale.  The expenses for Heartland's services were added to Loan 6137 as shown by a memorandum indicating how the sale proceeds for the Case 580 Super M Backhoe and the Case 550M Dozer were to be applied. (Ex. C, at 17).  The Heartland invoice is included in the exhibit for Loan 6137, which is Jordan Hylle's loan; however, Mr. Spence testified that the Case 305 Tractor, Serial No. Z8RZ02610 was collateral for Matthew Hylle's Loan.  None of the security agreements for the three loans identified at the trial list the Case 305 Tractor, Serial No. Z8RZ02610 as collateral.  How Farm Credit ultimately disposed of the Case 305 Tractor, Serial No. Z8RZ02610 was not disclosed at trial.

### iii.  Serial No. Z7RZ06929

The Case 305 tractor with Serial No. Z7RZ06929 was sold by BigIron Auctions on December 4, 2019; net sale proceeds were $39,950.00.  The serial number for the tractor was not listed on the settlement statement, but Matthew Hylle testified he was later able to determine the serial number for the tractor and confirmed it was Z7RZ06929.  A tractor with this serial number is not reflected on any of the security agreements introduced into evidence.  The net sale proceeds from the December 4, 2019 auction were paid to Evolve Bank.

### iv.  Serial No. Z7R732514 (the Disputed Tractor)

As stated above, a Bill of Sale dated May 26, 2016, the same date Loan 6134 and Loan 6137 were made, reflects that David Hylle Farms "sold" a Case 305 tractor to Jordan Hylle along with six other pieces of equipment for $241,500.00.  Sylvia Hylle prepared the Bill of Sale. David Hylle testified that he never received any money for the equipment.  The Case 305 tractor on the Bill of Sale reflects Serial No. Z7R732514.  This tractor description and serial number were then used when Farm Credit prepared the security agreement for Loan 6134.

20

Mr. Spence testified that Farm Credit requires a bill of sale on equipment being used for collateral when the equipment has been acquired in a private party transaction. Farm Credit relies on its borrowers to provide the serial numbers in this instance and does not independently verify the serial numbers. Mr. Spence admitted that the serial number could have been written down incorrectly. He also stated that when a borrower supplies the serial number it is not unusual to have one number that is different, but it is unusual to have an entire number be different.

Jordan Hylle testified unwaveringly on direct that he does not believe a Case 305 tractor with Serial No. Z7R732514 exists. He further testified that the tractor sold at the Dewitt Auction may have been the tractor that was intended to be collateral for Loan 6134. Counsel for plaintiff read excerpts from a deposition taken earlier in the litigation. At that deposition, when asked where the Case 305 tractor with Serial No. Z7R732514 was sold Jordan Hylle responded, "I don't know." (II Tr. at 24–25). After the deposition, Jordan Hylle had an opportunity to review the various serial numbers for the Case 305 tractors and it is his belief that none of the Hylles have ever owned a Case 305 tractor with Serial No. Z7R732514.

Matthew Hylle was questioned about the Case 305 tractors and serial numbers. He was adamant that there were only three Case 305 tractors and one of the serial numbers for the tractors must be wrong. When asked where the tractor is with serial number Z7R732514 Matthew Hylle responded, "I don't know. It must not exist, because we only had three 305 tractors." (I Tr. at 165). When asked if the tractor sold at BigIron Auctions with the serial number Z7RZ06929 was the tractor Jordan Hylle pledged as collateral to Farm Credit he stated that it was not. Matthew Hylle then suggested that the tractor sold at the Dewitt Auction, with serial number Z7RZ06930, had the wrong serial number. Matthew Hylle admitted that neither

the serial number of the tractor Farm Credit took possession of, nor the serial numbers of the two

tractors sold at auctions reflected the serial number on the security agreement for Loan 6134.

(b) *Drills*

The Drills were among the items of farm equipment "sold" to Jordan Hylle by David

Hylle Farms as reflected on the Bill of Sale dated May 26, 2016, with Serial Nos. FF1050 and

FF1055. These same two drills are reflected on the inventory list initialed by David Hylle and

Sylvia Hylle, with Serial Nos. FF1050 and FF1055. Two drills were sold approximately six

months later at the Witcher Auction on November 7, 2016. The consignor settlement sheet for

the auction reflects the consignor as "Matt Hylle" and "David Hylle Farms," with an address

matching David and Sylvia Hylle's home address. (Ex. O). The serial numbers for the drills

sold at the Witcher Auction are listed on the consignor settlement sheet as GPFF1055 and

GPFF1056. Each drill is listed as being sold for $1,000.00.

Although not an issue raised by any of the parties, the Court notes that the serial number

for one of the drills does not match the security agreement description for Loan 6134, the Bill of

Sale, or the inventory list. No one disputes, however, that the drills sold at the Witcher Auction

are the Drills intended to be pledged as collateral for Loan 6134. Jordan Hylle testified that the

Hylle farming operations had only two Great Plains drills, and these were the Drills given by him

as collateral for Loan 6134. The Witcher Auction sale document is consistent with David

Hylle's handwritten note prepared after the bankruptcy that stated the Drills were "sold by

Witcher Auctions to put on debt." (Ex. H). David Hylle testified that it was his decision to have

the Witcher Auction. He was not aware of whether the Drills were pledged as collateral by

Jordan Hylle to Farm Credit. Jordan Hylle admitted that he loaded the Drills for Matthew Hylle

to take to the auction.  Jordan Hylle stated he did not realize they were Farm Credit's collateral at the time.

The sale proceeds from the sale of the Drills were used to pay farming debt obligations. David Hylle testified the money from the auction would have been deposited into the farm account, but the sale proceeds were probably not paid directly to Farm Credit.  After the proceeds were deposited into the farm account, they could have been used to make the annual payment to Farm Credit on the debt obligation.

### (c)  *DMI Tigermate II Cultivator*

David Hylle's handwritten note prepared postpetition indicated that the DMI Tigermate II Cultivator was sold a couple of years prior to the bankruptcy, and the sale proceeds were applied to an obligation owed to Helena Chemical.  He confirmed at trial that it was sold at the Dewitt Auction held on February 26, 2018.  Consistent with this testimony, the settlement sheet for the Dewitt Auction includes the sale of a "DMI Field Cultivator" with a purchase price of $3,500.00. (Ex. I, at 1).  The settlement sheet lists "David Hylle Farms" as the account holder for the sale. (Ex. I).

As explained above, the net sale proceeds from the auction were paid to Helena Chemical to reduce the farming debt obligations so ARM would continue financing the farm operations.

### (d)  *Honey Bee Draper Header*

The inventory list initialed by David Hylle and Sylvia Hylle reflects two Honey Bee draper headers.  As stated above, two Honey Bee draper headers were sold by David Hylle Farms at the auction with BigIron Auctions held July 10, 2019.  (Ex. N).  Although not raised by the parties, the Court notes that neither of the serial numbers of the Honey Bee draper headers sold by BigIron Auctions matches the serial number reflected on the security agreement executed

by Matthew Hylle.  Mr. Spence testified that Farm Credit was not notified that the Honey Bee Draper Header pledged as collateral was being sold.

Matthew Hylle acknowledged that the Honey Bee Draper Header was pledged on Loan 1165.  He stated that he did not personally sell the Honey Bee Draper Header, nor was he aware that it was being sold at the time it was sold.  He believes BigIron Auctions must have met with his brothers and his father to list it at the July 10, 2019 auction.  This period would have been before he was working at BigIron Auctions.

He also acknowledged that he knew a draper header was being sold with a lot of other equipment, but he stated there were two headers, so he was not sure whether the one sold at the July 10, 2019 auction was the one pledged on Loan 1165.  On cross examination, Matthew Hylle testified that he found out the Honey Bee Draper Header was already sold when he was preparing for the December 4, 2019 auction at BigIron Auctions.  At that time, he was unable to find the draper headers to sell and was told by David Hylle that they had already been sold.

During Matthew Hylle's deposition taken prior to the trial he was asked whether he knew the draper header was being sold.  He responded that he "knew all the equipment eventually was going to be sold.  So, yeah, I guess so."  (I Tr. at 184).  The follow-up question to this was: "Well, it's real important that we be careful here because we're talking about a specific piece of equipment that I've already identified, you knew that the header was being sold, didn't you?" (I Tr. at 184).  His response was, "Yes."  (I Tr. at 184).

Finally, when asked about the sale proceeds for the Honey Bee Draper Header, Matthew Hylle stated he did not receive the check and was unaware of whether any of the sale proceeds were paid to Farm Credit, adding that only his mother, Sylvia Hylle, would know the answer to that question.  David Hylle's handwritten note prepared postpetition stated that the Honey Bee

Draper Header was "sold to put on debt." (Ex. H). At trial, David Hylle testified that Sylvia Hylle would know how the check from the auction was received and how the proceeds were applied.

## IV. Arguments

At trial, Farm Credit argued the debt owed to it by the Defendants should be declared nondischargeable pursuant to 11 U.S.C. § 523(a)(6) and that the Defendants' respective discharges should be denied pursuant to 11 U.S.C. § 727(a)(5).[8]

As to its claim against Jordan Hylle under Section 523(a)(6), Farm Credit argued Jordan Hylle sold or otherwise disposed of the Disputed Tractor, Drills, and DMI Tigermate II Cultivator in violation of the terms of the security agreements associated with Loan 6134 and Loan 6137. Farm Credit argued Jordan Hylle's breach of contract amounts to a willful and malicious injury under the Eighth Circuit case of *Luebbert v. Global Control Systems, Inc. (In re Luebbert)*, 987 F.3d 771 (8th Cir. 2021), and therefore, the debts owed on Loan 6134 and Loan 6137 should be determined to be nondischargeable.

As to its claim against Matthew Hylle under Section 523(a)(6), Farm Credit similarly argued Matthew Hylle sold or otherwise disposed of the Honey Bee Draper Header in violation

---

[8] In the Complaint, Farm Credit also alleged the debt owed to it should be held nondischargable under 11 U.S.C. § 523(a)(4) due to Matthew Hylle's alleged breach of fiduciary duty owed to Farm Credit. At trial, however, Farm Credit did not present argument or evidence as to this subsection. Therefore, the Court finds Farm Credit has abandoned this claim. *See Bridge Info. Sys., Inc.*, 460 F.3d at 1047. Furthermore, based on the evidence presented at trial, Section 523(a)(4) would not apply to the facts of this case, as there was no proof of a fiduciary relationship between Farm Credit and Matthew Hylle; rather, the evidence revealed only a contractual, debtor-creditor relationship between the parties. *See U.S. Dep't of Lab. v. Harris (In re Harris)*, 898 F.3d 834, 842 (8th Cir. 2018) ("To prevent a debtor's discharge under § 523(a)(4), the objecting party must 'establish . . . that a fiduciary relationship existed between [the debtor] and [the objecting party] . . . .'" (quoting *Jafarpour v. Shahrokhi (In re Shahrokhi)*, 266 B.R. 702, 707 (B.A.P. 8th Cir. 2001))); *Coleman v. Fields (In re Fields)*, 544 B.R. 156, 171 (Bankr. E.D. Ark. 2016) ("[a] mere contractual relationship is less than what is required to establish the existence of a fiduciary relationship" (quoting *EBCO Constr. Grp. v. Garretson (In re Garretson)*, 377 B.R. 214, 222 (Bankr. E.D. Ark. 2007))); *Rolfstad Enters. v. Wilson (In re Wilson)*, No. 00–20198, 2003 WL 25930963, at *13 (Bankr. S.D. Iowa May 21, 2003) ("corporate officials may be held to fiduciary duties to shareholders if statute or state law rule provides for such . . . . However, they are not found to be fiduciaries to third-party creditors." (citing *Barclays Am./Bus. Credit, Inc. v. Long (In re Long)*, 774 F.2d 875, 878–79 (8th Cir. 1985))).

of the terms of the security agreement associated with Loan 1165, and the debt owed on the loan should be determined to be nondischargeable.  In addition, at trial, Farm Credit argued Matthew Hylle should be held liable for the "conversion" of the Disputed Tractor, collateral for *Jordan Hylle's* loan, because the Defendants cannot account for the "missing" tractor.  Farm Credit argued Matthew Hylle participated in the sale or other disposition of the tractor and under *Luebbert*, the debt owed should be determined to be nondischargeable under Section 523(a)(6).

As to Farm Credit's claim against Jordan Hylle under Section 727(a)(5), Farm Credit alleged that Jordan Hylle has failed to provide sufficient evidence to account for the loss of the Disputed Tractor, Drills, and DMI Tigermate II Cultivator pledged to Farm Credit as collateral. It argued Jordan Hylle's discharge should be denied on this basis.

As to Farm Credit's claim against Matthew Hylle under Section 727(a)(5), Farm Credit similarly alleged that Matthew Hylle has failed to provide sufficient evidence to account for the loss of the Honey Bee Draper Header pledged to Farm Credit as collateral.  It argued Matthew Hylle's discharge should be denied on this basis.

### V.  Discussion

#### A.  Section 523(a)(6)

Farm Credit first asks the Court to find that the Defendants' debts are nondischargeable under 11 U.S.C. § 523(a)(6).  This section provides, "A discharge under section 727 . . . does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity."  11 U.S.C. § 523(a)(6).  In order to be successful under this section, a creditor must prove: "(1) the debtor caused an injury to the creditor; (2) the injury [was] willfully inflicted . . . and (3) the debtor's actions [were] malicious." *Luebbert v. Glob. Control Sys., Inc. (In re Luebbert)*, 987 F.3d 771, 778 (8th Cir. 2021) (citing

*Blocker v. Patch (In re Patch)*, 526 F.3d 1176, 1180–81 (8th Cir. 2008)).  "The party seeking to prevent discharge bears the burden of showing each element by a preponderance of the evidence." *Id.* (citing *Patch*, 526 F.3d at 1180).

### (1)  Injury to Farm Credit

To determine whether Farm Credit has alleged a successful claim under Section 523(a)(6), the Court must first determine whether Farm Credit was injured by the Defendants' conduct.  "Courts considering the applicability of the § 523(a)(6) exception to discharge must 'first determine exactly what injury the debt is for, and then determine whether the debtor both willfully and maliciously caused that injury.'" *Id.* (quoting *Patch*, 526 F.3d at 1181).  Courts have defined "injury" as the "invasion of the legal rights of another." *Geiger v. Kawaauhau (In re Geiger)*, 113 F.3d 848, 852 (8th Cir. 1997), *aff'd sub nom. Kawaauhau v. Geiger*, 523 U.S. 57 (1998).  "[T]he word 'injury' usually connotes legal injury (*injuria*) in the technical sense, not simply harm to a person." *Id.*  "The principle that a breach of contract constitutes a legal injury is foundational to common law jurisprudence." *Luebbert*, 987 F.3d at 779.

Farm Credit argued the Defendants caused it injury because they sold or otherwise disposed of collateral in violation of the terms of the security agreements, which increased the loss to Farm Credit on the Defendants' loans.  The Court will address injury caused by each defendant below.

### (a)  Jordan Hylle

Farm Credit proved Jordan Hylle breached the terms of the loan documents associated with Loan 6134 and Loan 6137.  Jordan Hylle defaulted on both loans by not paying the annual payments due in 2019.  At trial, it was undisputed that as of September 13, 2021, a balance of $96,565.55 remained due on Loan 6134, and a balance of $2,133.64 remained due on Loan 6137.

27

The Court therefore finds that Jordan Hylle caused Farm Credit an injury by not making payments as required under the terms of the loans. *See First Midwest Bank-Deerfield Branches v. Beeler (In re Beeler)*, No. 08-4006, 2009 WL 363907, at *11 (Bankr. D.S.D. Feb. 10, 2009) (concluding debt was the bank's deficiency claim and injury giving rise to that debt was the bank not receiving payment in full on its claim); *see also Luebbert*, 987 F.3d at 779 (breach of contract is a legal injury). *Cf. First Am. Bank v. Voorhees (In re Voorhees)*, No. 99-99044, 2000 WL 35798976, at *6 (Bankr. S.D. Iowa Dec. 5, 2000) (finding no injury where, despite technical conversion of collateral, notes were paid in full).

Farm Credit also proved Jordan Hylle breached the security agreements associated with Loan 6134 and Loan 6137. Pursuant to those security agreements, Jordan Hylle was required to tender the funds from any sales of the collateral to Farm Credit within ten days. As discussed further below, Farm Credit proved that the Drills and DMI Tigermate II Cultivator[9] were sold in violation of the terms of the security agreements. Accordingly, the Court finds Farm Credit proved Jordan Hylle invaded its legal interests by breaching the terms of the security agreements associated with Loan 6134 and Loan 6137, resulting in an injury to Farm Credit. *See One Am. Bank v. Jacobson (In re Jacobson)*, 532 B.R. 742, 747 (Bankr. N.D. Iowa 2015) (violation of security agreement was injury).

### (b) *Matthew Hylle*

Likewise, Farm Credit proved Matthew Hylle breached the terms of the loan documents associated with Loan 1165. Matthew Hylle defaulted on the loan by not paying the annual payment due in 2019. At trial, it was undisputed that as of September 13, 2021, a balance of

---

[9] The Disputed Tractor is discussed below.

$14,689.26 remained due on the loan.  The Court therefore finds that Matthew Hylle caused Farm Credit an injury by not making payments as required under the terms of Loan 1165.

Farm Credit also proved Matthew Hylle breached the security agreement associated with Loan 1165.  That security agreement required Matthew Hylle to tender the funds from any sales of collateral to Farm Credit within ten days.  As discussed further below, Farm Credit proved it held a security interest in the Honey Bee Draper Header pledged as collateral for Loan 1165, and the collateral was sold in violation of the security agreement.  Accordingly, the Court finds Farm Credit proved Matthew Hylle invaded its legal interests by breaching the terms of the security agreement associated with Loan 1165, resulting in an injury to Farm Credit.

Farm Credit also argued Matthew Hylle injured Farm Credit as it concerns the Disputed Tractor, which was collateral for Jordan Hylle's loan.  This argument is further addressed below.

### (2)  Willful and Malicious Injury

Once an injury has been shown, the Court must "determine whether the debtor both 'willful[ly] and malicious[ly]' caused that 'injury.'"  *Patch*, 526 F.3d at 1181 (alteration in original).  As has been consistently noted by the Eighth Circuit, "'malice and willfulness are two different characteristics' and they 'should not be lumped together to create an amorphous standard.'"  *Luebbert*, 987 F.3d at 780 (quoting *Barclays Am./Bus. Credit, Inc. v. Long (In re Long)*, 774 F.2d 875, 881 (8th Cir. 1985)).

"Evaluating willfulness requires an inquiry into the debtor's subjective intent to cause injury."  *Id.*  To establish that an injury was willful, Farm Credit must provide "proof that the debtor desired to bring about the injury or was, in fact, substantially certain that his conduct would result in the injury that occurred."  *Patch*, 526 F.3d at 1180–81 (citing *Geiger*, 113 F.3d at 852–54).  "[N]ondischargeability takes a deliberate or intentional *injury*, not merely a deliberate

or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998); *see also Sells v. Porter (In re Porter)*, 539 F.3d 889, 894 (8th Cir. 2008) (willful injury is one which involves a "deliberate or intentional invasion of the legal rights of another").

The Eighth Circuit has explained that to meet the willful requirement, "[i]t is enough to show that [a debtor's] conduct amount[ed] to an intentional tort." *Luebbert*, 987 F.3d at 784. "When a debtor impermissibly disposes of his own property subject to a security interest in favor of a creditor and fails to remit the sale proceeds to the creditor, the debtor may be liable for the tort of conversion." *Mercantile Bank of Ark. v. Speers (In re Speers)*, 244 B.R. 142, 145 (Bankr. E.D. Ark. 2000).

Malicious conduct means "conduct targeted at the creditor at least in the sense that the conduct is certain or almost certain to cause harm." *Luebbert*, 987 F.3d at 780 (quoting *Waugh v. Eldridge (In re Waugh)*, 95 F.3d 706, 711 (8th Cir. 1996)). "Malice is only implicated by 'conduct more culpable than that which is in reckless disregard of creditors' economic interests and expectancies.'" *Id*. (quoting *Long*, 774 F.2d at 880). "[D]ebts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Kawaauhau*, 523 U.S. at 64. "[K]nowledge that legal rights are being violated is insufficient to establish malice, absent some additional 'aggravated circumstances.'" *Long*, 774 F.2d at 881. "A robust collection of bankruptcy court and circuit court authority suggests that the point of the malice inquiry is to determine whether the debtor's conduct was 'aggravated' or 'socially reprehensible' such that an imputation of malice is justified." *Luebbert*, 987 F.3d at 780 (citing *Bundy Am. Corp. v. Blankfort (In re Blankfort)*, 217 B.R. 138, 143–44 (Bankr. S.D.N.Y. 1998); *Rescuecom Corp. v. Khafaga (In re Khafaga)*, 419 B.R. 539, 550 (Bankr. E.D.N.Y. 2009)). Because "[i]ntentional harm is difficult to establish, . . . the likelihood of harm in an objective sense may

30

be considered in evaluating intent." *Osborne v. Stage (In re Stage)*, 321 B.R. 486, 493 (B.A.P. 8th Cir. 2005) (citing *Long*, 774 F.2d at 881).

Even where conversion is proven, the case law is clear that conversion alone is not enough to prevent a debt from being discharged. *Long*, 774 F.2d at 879 (citing *Davis v. Aetna Acceptance Co.*, 293 U.S. 328 (1934)). "[A]n intentional tort such as conversion does satisfy the 'willful injury' component of (a)(6)," but malice must also be proven. *Outlander Gravel v. Nietert (In re Nietert)*, 521 B.R. 882, 891 (Bankr. W.D. Ark. 2013) (citing *Stage*, 321 B.R. at 492–93). "A debtor's retention of proceeds of sales of collateral, while clearly a breach of a security agreement, is not enough to establish malice." *Johnson v. Logue (In re Logue)*, 294 B.R. 59, 63 (B.A.P. 8th Cir. 2003). "Where a debtor has used the proceeds in an attempt, albeit unsuccessful one, to keep a business afloat, malice may not necessarily be inferred from the debtor's conduct." *Id*. (citing *First Nat'l Bank of Fayetteville v. Phillips (In re Phillips)*, 882 F.2d 302, 305 (8th Cir. 1989); *Long*, 774 F.2d at 882).

At trial, Farm Credit argued that by selling or disposing of the pledged pieces of equipment in violation of the terms of the security agreements, the Defendants converted the pledged collateral and willfully and maliciously injured Farm Credit. The Court will address Farm Credit's argument as to each defendant.

### (a) *Jordan Hylle*

To secure repayment of Loan 6134, Jordan Hylle signed a security agreement purportedly granting Farm Credit a security interest in the Disputed Tractor and Drills. To secure repayment of Loan 6137, Jordan Hylle signed a security agreement granting Farm Credit a security interest in the DMI Tigermate II Cultivator, among other equipment. Farm Credit argued that the Disputed Tractor is "missing" and was sold or otherwise disposed of by Jordan Hylle (and

31

Matthew Hylle as discussed below), which caused a willful and malicious injury to Farm Credit. As to the Drills and DMI Tigermate II Cultivator, Farm Credit argued that Jordan Hylle sold these pieces of equipment in contravention of its security interest in the equipment, evidencing a willful and malicious injury to Farm Credit. The Court will address Farm Credit's argument as to each piece of equipment.

### i. Disputed Tractor

Under Arkansas law, "[a] security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral." ARK. CODE. ANN. § 4-9-203(a) (2020). A security interest becomes enforceable against the debtor when "(1) value has been given; (2) the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and (3) . . . the debtor has authenticated a security agreement that provides a description of the collateral." § 4-9-203(b).

In reviewing these elements, the Court finds that Farm Credit proved the first and third elements as to the Disputed Tractor. Value was given in connection with Loan 6134; the note provided Farm Credit would loan Jordan Hylle $100,000.00. In addition, Jordan Hylle signed the security agreement associated with Loan 6134, and the security agreement contained a description of the Disputed Tractor. The first and third elements are met.

However, as to the second element, the Court finds that Farm Credit failed to prove Jordan Hylle had rights in the Disputed Tractor or the power to transfer rights in the Disputed Tractor to Farm Credit. During the trial, the Court heard conflicting testimony regarding the existence of the Disputed Tractor. According to David Hylle, Matthew Hylle, and Jordan Hylle, only three Case 305 tractors ever existed. Since three Case 305 tractors were accounted for at the trial, they assert that a tractor with a serial number of Z7R732514 (the Disputed Tractor)

32

never existed.  According to Farm Credit, there must have been a fourth Case 305 tractor bearing serial number Z7R732514 as this tractor was listed on various documents including the Bill of Sale.

In reviewing the evidence, the Court finds the testimony of David Hylle and the Defendants regarding the Case 305 tractors credible.  All three were unequivocal in testifying that only three Case 305 tractors have ever existed.  Their testimony was corroborated by the inventory list reflecting only three Case 305 tractors.  Jordan Hylle and Matthew Hylle even discussed how the three tractors were identified by the names "Gertrude," "Belly," and "Lightning."  In addition, three Case 305 tractors were accounted for at the trial: (1) the Case 305 tractor with Serial No. Z7RZ06930 was sold at the Dewitt Auction to Moody Equipment Company; (2) the Case 305 tractor with Serial No. Z8RZ02610 was tendered to Farm Credit by Jordan Hylle; and (3) the Case 305 tractor with Serial No. Z7RZ06929 was sold by BigIron Auctions on December 4, 2019.  Based on the evidence introduced, the Court finds these three tractors are the three Case 305 tractors that existed.

Given the evidence introduced at trial, Farm Credit failed to prove the existence of a fourth tractor.  While a fourth serial number appears on the inventory list and on the Bill of Sale prepared by Sylvia Hylle, the testimony revealed that Farm Credit used the information on the Bill of Sale to prepare the security agreement for Loan 6134.  Mr. Spence testified that Farm Credit relied on its borrowers to provide the serial number; it did not independently verify the serial number.  No other documents such as tax returns, purchase records, or maintenance records were introduced to support a finding that the Disputed Tractor existed.  In examining the testimony, evidence, and credibility of the witnesses, the Court finds that the evidence does not support a finding that a fourth Case 305 tractor existed.

Because Farm Credit failed to prove the Disputed Tractor existed, there was no proof Jordan Hylle had power to transfer an interest in the Disputed Tractor to Farm Credit or proof of attachment of a security interest in favor of Farm Credit.  The Court finds Farm Credit failed to prove it had an interest in the Disputed Tractor, much less that the Disputed Tractor was sold or otherwise disposed of in violation of that interest.  For these reasons, the Court finds Farm Credit failed to prove Jordan Hylle converted the Disputed Tractor, or otherwise willfully injured it by selling or disposing of the Disputed Tractor.  *Cf. Bank Nw. v. Clevenger (In re Clevenger)*, No. 20-4019, 2020 WL 7753313, at *9 (Bankr. W.D. Mo. Dec. 29, 2020) (no conversion or willful injury found where debtor, despite listing tractor on balance sheet, did not own tractor and therefore could not have transferred tractor).

Likewise, Farm Credit failed to prove Jordan Hylle maliciously injured it by selling or otherwise disposing of the Disputed Tractor, a tractor that did not exist and in which Farm Credit did not hold a security interest.

Accordingly, the Court finds Farm Credit failed to meet its burden of proof under Section 523(a)(6) as it concerns the Disputed Tractor.  Farm Credit did not argue any other basis for its claim under Section 523 regarding the Disputed Tractor at trial.

## ii. Drills

Unlike the Disputed Tractor, there was no dispute at trial regarding Farm Credit's interest in the Drills.[10]  The evidence revealed Jordan Hylle pledged the Drills as collateral to secure repayment of Loan 6134.  According to the testimony and evidence, at the instruction of David

---

[10] As mentioned in footnote 5, above, the Bill of Sale did not contain a signature for the seller, and the Court questions whether Jordan Hylle had rights in the Drills or the power to transfer rights in the Drills to Farm Credit. However, because the parties did not raise this issue at trial or dispute Farm Credit's interest in the Drills, the Court will not raise it *sua sponte* or discuss it further in this opinion.

Hylle, the Drills were sold at the Witcher Auction on November 7, 2016, for $1,000.00 each.[11]

Jordan Hylle loaded the Drills to be transported to the auction.  The consignor settlement sheet

associated with the Witcher Auction lists "Matt Hylle" and "David Hylle Farms" (but not Jordan

Hylle) as the consignor, with an address matching David and Sylvia's home address.  (Ex. O).

The sale proceeds from the Witcher Auction were deposited into the "farm account" and used to

pay farming debt obligations.  They were not paid directly to Farm Credit within ten days but

could have been used to make the annual payment to Farm Credit on Loan 6134.  Following the

Witcher Auction, the 2017 and 2018 annual payments were made on Loan 6134.

Farm Credit argues Jordan Hylle converted the Drills under Arkansas law, which is

sufficient to except the debt from discharge pursuant to Section 523(a)(6) under the recent Eighth

Circuit *Luebbert* case, 987 F.3d 771 (8th Cir. 2021).  In *Luebbert*, the Eighth Circuit clarified

that when there is an underlying judgment, it is not necessary that the judgment be for an

intentional tort to find judgment debt for breach of contract nondischargeable; rather, "the

*willfulness* requirement is met when the bankruptcy court finds facts showing that the debtor's

conduct accompanying the breach of contract amounted to an intentional tort against the

creditor."  *Luebbert*, 987 F.3d at 782 (emphasis added).  Because the debtor's conduct amounted

to conversion under Missouri law, the Eighth Circuit found the debtor "inflicted a *willful* injury"

on the creditor.  *Id*. at 783 (emphasis added).  Malice still had to be proven in order for the

Eighth Circuit to find the debt nondischargeable.  *Id*.

---

[11] Again, the Court notes the serial number for one drill sold at the Witcher Auction does not match the serial number for one of the drills pledged as collateral for Loan 6134.  However, Jordan Hylle testified that there were only two Great Plains drills, and those two drills were the Drills given as collateral for Loan 6134.  In addition, David Hylle's handwritten note prepared postpetition indicated that the Drills were sold by Witcher Auctions. Because the parties did not raise the issue of the discrepancy in one of the serial numbers, and because there was no dispute the Drills were both sold at the Witcher Auction, the Court finds the preponderance of the evidence supports a finding that the Drills were both sold at the Witcher Auction held November 7, 2016.

Here, Farm Credit proved Jordan Hylle violated the terms of the security agreement associated with Loan 6134 when the Drills were sold and proceeds were not paid to Farm Credit within ten days.  However, the Court need not determine whether Jordan Hylle's actions amounted to conversion under Arkansas law, or otherwise showed a subjective intent to injure Farm Credit (i.e., a willful injury), because the evidence before the Court is insufficient to prove Jordan Hylle acted with malice.  *See Nietert*, 521 B.R. at 891 (even if there is conversion, "malice must also be proven.")

After the Witcher Auction, annual payments for 2017 and 2018 were made on Loan 6134.  In addition, the testimony revealed that the proceeds from the sale were used to further the farming operation; the proceeds paid farming debt and could have been used to help make the annual payments to Farm Credit.  In addition, Jordan Hylle credibly testified that he did not intend to not pay the debt owed to Farm Credit; payments on the loan continued to be made until the farming operations were discontinued in 2019.  Given this evidence, the Court finds Farm Credit failed to prove Jordan Hylle acted with malice.  There was no evidence of "aggravated" circumstances or of conduct targeted at Farm Credit—no evidence that Jordan Hylle intended to harm Farm Credit or was certain or almost certain his conduct would harm Farm Credit.  Rather, the evidence revealed the intent of Jordan Hylle to continue his farming operations and continue making the annual payments on Farm Credit's loans.  *See Logue*, 294 B.R. at 63.

For these reasons, the Court finds Farm Credit has failed to prove Jordan Hylle acted with malice in allowing the sale of the Drills.  Accordingly, the Court finds Farm Credit failed to meet its burden of proof under Section 523(a)(6) as it concerns the Drills.

### iii. DMI Tigermate II Cultivator

As with the Drills, there was no dispute at trial regarding Farm Credit's interest in the DMI Tigermate II Cultivator.[12]  The evidence revealed Jordan Hylle pledged this piece of equipment as collateral to secure repayment of Loan 6137.  According to the testimony, the DMI Tigermate II Cultivator was sold at the Dewitt Auction on February 26, 2018, for $3,500.00.  Jordan Hylle helped transport the cultivator to the Dewitt Auction.  David Hylle testified that several pieces of farm equipment were sold at the Dewitt Auction in order to reduce farm debt so that ARM would continue to finance the farm operations.  The items were checked in under the name "David Hylle Farms" (not Jordan Hylle).  Likewise, the settlement sheet for the auction reflects "David Hylle Farms" (not Jordan Hylle) as the account holder for the sale.  The sale proceeds from the Dewitt Auction, in the form of a check made payable to David Hylle Farms, were mailed to David and Sylvia Hylle's home address.  The proceeds were paid to Helena Chemical to reduce farm debt, and thereafter, ARM financed the 2018 farming operations.

Here, Farm Credit proved Jordan Hylle violated the terms of the security agreement associated with Loan 6137 when the DMI Tigermate II Cultivator was sold and the proceeds were not paid to Farm Credit within ten days.  However, as with the Drills, the Court need not determine whether Jordan Hylle's actions amounted to conversion under Arkansas law, or otherwise showed a willful injury, because the evidence before the Court is insufficient to prove Jordan Hylle acted with malice.

After the Dewitt Auction, which was held in February 2018, the 2018 annual payment was made on Loan 6137.  In addition, the proceeds from the auction were paid to Helena Chemical to reduce farm debt, which enabled Jordan Hylle to continue to farm in 2018.  Helena

---

[12] Again, the Court notes the issue with the Bill of Sale but will not raise it *sua sponte*, as explained in footnotes 5 and 10, above.  The Court will not address this issue further in connection with the DMI Tigermate II Cultivator.

Chemical was party to a subordination agreement with Farm Credit.  Although the testimony revealed that Helena Chemical's lien was inferior to Farm Credit's under this subordination agreement, the testimony also revealed that Jordan Hylle was not a party to the agreement and had not seen a copy of the agreement.  There was no evidence to suggest that Jordan Hylle knew Farm Credit's lien on the DMI Tigermate II Cultivator was superior to Helena Chemical's lien under the terms of the subordination agreement.  In addition, Jordan Hylle credibly testified that he had no intention to not pay the debt owed to Farm Credit, and only stopped making payments when the farming operations were discontinued in 2019.  The Court finds Farm Credit failed to prove Jordan Hylle acted with malice.  Farm Credit did not show evidence of "aggravated" circumstances or of conduct targeted at Farm Credit.  There was no evidence that Jordan Hylle intended to harm Farm Credit or was certain or almost certain that his conduct would harm Farm Credit.  Again, the evidence revealed an intent of Jordan Hylle to continue his farming operations, which would benefit all creditors including Farm Credit.  *See Logue*, 294 B.R. at 63.

For these reasons, the Court finds Farm Credit has failed to prove Jordan Hylle acted with malice in allowing the sale of the DMI Tigermate II Cultivator.  Accordingly, the Court finds Farm Credit failed to meet its burden of proof under Section 523(a)(6) as it concerns the DMI Tigermate II Cultivator.

### *(b)  Matthew Hylle*

To secure repayment of Loan 1165, Matthew Hylle signed a security agreement granting Farm Credit a security interest in the Honey Bee Draper Header, among other items of equipment.  Farm Credit argued that Matthew Hylle sold the Honey Bee Draper Header in contravention of its security interest in the equipment.

Farm Credit also argued Matthew Hylle is liable for conversion of the Disputed Tractor, collateral for *Jordan Hylle's* loan, because the Defendants cannot account for the "missing" tractor, or because Matthew Hylle participated in the sale or other disposition of the tractor, and under *Luebbert*, the debt owed should be declared nondischargeable under Section 523(a)(6).

i. Honey Bee Draper Header

There was no dispute at trial concerning Farm Credit's interest in the Honey Bee Draper Header. Matthew Hylle pledged this piece of equipment as collateral to secure repayment of Loan 1165. The evidence revealed the Honey Bee Draper Header was sold by David Hylle Farms (not Matthew Hylle) at BigIron Auctions on July 10, 2019.[13] At the time, Matthew Hylle was working for the Cross County Sheriff's Department. He did not become aware of the sale until months later, when he was preparing for the second sale with BigIron Auctions. Matthew Hylle testified that he did not receive the check from the sale and did not know how the proceeds were applied, stating Sylvia Hylle would be the person who would know how the proceeds were spent. David Hylle's handwritten note provided that the Honey Bee Draper Header was "sold to put on debt." (Ex. H). At trial, David Hylle explained that Sylvia Hylle would know how the check from BigIron Auctions was made out and how it was spent.

Farm Credit proved Matthew Hylle violated the terms of the security agreement associated with Loan 1165 when the Honey Bee Draper Header was sold and the proceeds were not paid to Farm Credit within ten days.[14] However, the Court need not determine whether Matthew Hylle's actions amounted to conversion under Arkansas law, or otherwise showed a

---

[13] Although not raised by the parties, the serial numbers for the draper headers sold at the auction do not match the serial number for the Honey Bee Draper Header pledged as collateral for Loan 1165. The testimony revealed, however, that there were only two Honey Bee draper headers, and these were both sold at the July 10, 2019 auction with BigIron Auctions.

[14] In reviewing the payment history for Loan 1165, no payment was made on the loan after the sale with BigIron Auctions on July 10, 2019.

willful injury, because the evidence before the Court is insufficient to prove Matthew Hylle acted with malice.

The evidence revealed that the Honey Bee Draper Header was sold by David Hylle Farms.  Matthew Hylle explained in his deposition, which was read into the record, that he "never intended not to pay Farm Credit."  (I Tr. at 227).  At trial, the Court found Matthew Hylle to be a credible witness.  There was no evidence in the record that Matthew Hylle's conduct was targeted at Farm Credit, aggravated, or socially reprehensible.  There was no evidence Matthew Hylle intended to harm Farm Credit or was certain or almost certain that his conduct would harm Farm Credit.  At the time of the sale, Matthew Hylle was working for the Cross County Sheriff's Department and was unaware the header was being sold.  He confirmed at trial that he did not participate, or even know about, the July 10, 2019 auction with BigIron Auctions until after the auction was held.  Given the evidence introduced, the Court cannot find he acted with malice. The Court finds Farm Credit failed to prove Matthew Hylle acted with malice when the Honey Bee Draper Header was sold by David Hylle Farms.

For these reasons, the Court finds Farm Credit failed to meet its burden of proof under Section 523(a)(6) as it concerns the Honey Bee Draper Header.

## ii. Disputed Tractor

As stated above, the Court has found Farm Credit failed to prove the Disputed Tractor ever existed, much less that it held an interest in the Disputed Tractor or that the tractor was sold in contravention of its interest.  For the same reasons stated above as to Jordan Hylle, the Court

finds Farm Credit failed to prove Matthew Hylle converted the Disputed Tractor, or otherwise willfully or maliciously[15] injured it by selling or otherwise disposing of the Disputed Tractor.

Accordingly, the Court finds Farm Credit failed to meet its burden of proof under Section 523(a)(6) as it concerns Matthew Hylle and the Disputed Tractor.[16]

Farm Credit bore the burden of proving each element under Section 523(a)(6) by a preponderance of the evidence. Because Farm Credit failed to meet its burden, its claims under Section 523(a)(6) must be denied.

**B. Section 727(a)(5)**

Farm Credit next asks the Court to deny the Defendants' discharges under 11 U.S.C. § 727(a)(5). Under this section, a debtor's discharge is denied where "the debtor has failed to explain satisfactorily . . . any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5). "The purpose of § 727(a)(5) is to require the debtor to cooperate with the trustee and creditors in their efforts to trace the disposition of assets of the estate." *Bailey v. Whitehead (In re Whitehead)*, 483 B.R. 902, 909 (Bankr. E.D. Ark. 2012) (citing *Palatine Nat'l Bank v. Olson (In re Olson)*, 98 B.R. 944, 953 (Bankr. D. Minn. 1988), *aff'd*, 916 F.2d 481 (8th Cir. 1990)).

---

[15] As stated above, under *Luebbert*, the creditor must still prove the debtor acted maliciously in order for a debt to be declared nondischargeable under Section 523(a)(6); conversion alone, without a showing of malice, is insufficient. *Luebbert*, 987 F.3d at 783; *see also Nietert*, 521 B.R. at 891.

[16] In the Complaint, Farm Credit also alleged that Matthew Hylle participated in and permitted the sale of the DMI Tigermate II Cultivator, collateral for Jordan Hylle's loan, and should be found liable for a nondischargeable debt under Section 523(a)(6) for this "conversion." Farm Credit did not make this argument at trial, but even if it had, Farm Credit failed to prove Matthew Hylle acted maliciously. As stated above, the cultivator was sold at the Dewitt Auction under the name "David Hylle Farms." The proceeds were paid to David Hylle Farms and used to pay Helena Chemical, which allowed Jordan Hylle and Matthew Hylle to farm in 2018. Just as Farm Credit failed to prove Jordan Hylle acted with malice in allowing the sale of the cultivator, it failed to prove Matthew Hylle acted with malice in allowing the sale of the cultivator. There was no evidence that Matthew Hylle's conduct was targeted at Farm Credit or that Matthew Hylle was certain or almost certain his conduct would harm Farm Credit. Rather, the evidence showed an intent of Matthew Hylle to continue his farming operations, and to continue making payments to Farm Credit.

In deciding whether a debtor's discharge should be denied under this section, courts have traditionally employed a burden-shifting analysis. The objecting party "has the burden of proving facts establishing that a loss or shrinkage of assets actually occurred." *Floret, L.L.C. v. Sendecky (In re Sendecky)*, 283 B.R. 760, 765 (B.A.P. 8th Cir. 2002) (citing *Cadle Co. v. Stewart (In re Stewart)*, 263 B.R. 608, 618 (B.A.P. 10th Cir. 2001), *aff'd*, 35 Fed. App'x 811 (10th Cir. 2002)). Once the objecting party meets this burden, "the burden shifts to the debtor to [satisfactorily] explain the loss." *Id.* (citing *Stewart*, 263 B.R. at 618); *see also Whitehead*, 483 B.R. at 909 ("the burden is on the debtor to provide a satisfactory explanation as to how [the] asset was lost").

"What constitutes a 'satisfactory' explanation is left to the discretion of the Court." *Whitehead*, 483 B.R. at 909 (quoting *Riley v. Riley (In re Riley)*, 305 B.R. 873, 885 (Bankr. W.D. Mo. 2004)). "An important component in ascertaining the reasonableness of any explanation is its capacity for verification; that is, is the explanation sufficient to enable either the trustee or a creditor to properly investigate the circumstances surrounding the loss or deficiency." *Allred v. Vilhauer (In re Vilhauer)*, 458 B.R. 511, 514–15 (B.A.P. 8th Cir. 2011) (quoting *Baker v. Reed (In re Reed)*, 310 B.R. 363, 370 (Bankr. N.D. Ohio 2004)). In order for the explanation to be satisfactory, "[t]he Court needs proof of what happened to the asset so that it does not have to speculate about what happened to the asset or speculate as to the veracity of the debtor's explanation." *Whitehead*, 483 B.R. at 909–10 (citing *First State Bank of Newport v. Beshears (In re Beshears)*, 196 B.R. 468, 473 (Bankr. E.D. Ark. 1996); *Kaler v. Huynh (In re Huynh)*, 392 B.R. 802, 813 (Bankr. D.N.D. 2008)).

The debtor's explanation must "convince the bankruptcy judge that the debtor has not hidden or improperly shielded assets." *Id.* at 910 (quoting *First Am. Bank of N.Y. v. Bodenstein*

*(In re Bodenstein)*, 168 B.R. 23, 33 (Bankr. E.D.N.Y. 1994)).  "Unsubstantiated, uncorroborated and undocumented testimony from the debtor is not likely sufficient."  *Vilhauer*, 458 B.R. at 515 (citing *Beshears*, 196 B.R. at 473).

In examining whether to deny a debtor's discharge under Section 727(a)(5), "[t]he Court does not sit in judgment of the debtor's pre-petition actions that resulted in the loss of the asset; instead, the key consideration is whether the debtor has provided a reliable explanation of what happened to the asset."  *Id.* (citing *Anderson v. Sharp (In re Sharp)*, No. 07-01241, 2008 WL 3539671, at *2 (Bankr. E.D. Ark. Aug. 19, 2008)).

"[D]enying the debtor a discharge is a 'harsh and drastic penalty.'"  *Korte v. Internal Revenue Serv. (In re Korte)*, 262 B.R. 464, 471 (B.A.P. 8th Cir. 2001) (quoting *Am. Bank v. Ireland (In re Ireland)*, 49 B.R. 269, 271 n.1 (Bankr. W.D. Mo. 1985)).  Therefore, causes of action under Section 727(a) are "strictly construed in favor of the debtor."  *Id.* (quoting *Fox v. Schmit (In re Schmit)*, 71 B.R. 587, 589–90 (Bankr. D. Minn. 1987)).

Farm Credit argued the Defendants' respective discharges should be denied as they have failed to satisfactorily explain the loss or deficiency of assets securing the loans with Farm Credit.  The Court will address Farm Credit's argument as to each defendant below.

### (1)  Jordan Hylle

As stated above, Jordan Hylle executed security agreements pledging the Disputed Tractor, Drills, and DMI Tigermate II Cultivator as collateral to secure repayment of his loans with Farm Credit.  The Court will address Farm Credit's argument as to each piece of collateral.

### (a) Disputed Tractor

As stated above, in considering all the evidence before it, the Court has found the Disputed Tractor did not exist.  Rather, the evidence revealed that only three Case 305 tractors

were used in the Hylles' farming operations.  Three tractors have been accounted for,[17] and none of the serial numbers for the three tractors match the serial number listed for the Disputed Tractor.  Although the inventory list, the Bill of Sale, and the security agreement do provide some evidence of the existence of the Disputed Tractor, as previously discussed, the Court finds that any evidence of the tractor's existence is overcome by the testimony and exhibits presented at trial.

Farm Credit bore the burden of proving that "a loss or shrinkage of assets actually occurred" as it relates to the Disputed Tractor.  *Sendecky*, 283 B.R. at 765.  By failing to prove the existence of a fourth tractor bearing Serial No. Z7R732514 (the Disputed Tractor), Farm Credit failed to meet this initial burden.  In addition, at trial, a satisfactory explanation was given as to what happened to the three Case 305 tractors that existed, as well as what happened to the proceeds from the dispositions.

For all these reasons, the Court finds that Farm Credit's claim under Section 727(a)(5) as to the Disputed Tractor must be denied.

### (b)  Drills

There was no dispute at trial concerning Farm Credit's security interest in the Drills.  The Drills were pledged as collateral to secure Loan 6134.  No party disputed that the Drills were disposed of prior to the filing of Jordan Hylle's bankruptcy case.  Based on the undisputed evidence, the Court finds that Farm Credit met its burden of proving a "loss of assets" occurred.

---

[17] The three tractors were accounted for at trial as follows: (1) the Case 305 tractor with Serial No. Z7RZ06930 was sold at the Dewitt Auction to Moody Equipment Company, and proceeds from the sale were paid to Helena Chemical; (2) the Case 305 tractor with Serial No. Z8RZ02610 was tendered to Farm Credit by Jordan Hylle; and (3) the Case 305 tractor with Serial No. Z7RZ06929 was sold by BigIron Auctions on December 4, 2019, and the proceeds were paid to Evolve Bank.

However, in reviewing the evidence, the Court finds Jordan Hylle has satisfactorily explained the disposition of the Drills.  David Hylle and Jordan Hylle consistently testified that only two Great Plains drills were used in the Hylle farming operations.  They further testified that these two drills were the Drills pledged to Farm Credit and the Drills were sold at the Witcher Auction.  This testimony is consistent with the consignor settlement sheet associated with the Witcher Auction, which reflects that David Hylle Farms sold two Great Plains drills.  This testimony is also consistent with David Hylle's handwritten note stating that the Drills were "sold by Witcher Auctions to put on debt."  (Ex. H).  At the trial, Farm Credit did not contest that the Drills were sold at auction, and even argued that "there is no question that the Great Plains drills were sold for 1,000 dollars apiece."  (II Tr. at 56).

Furthermore, the evidence at trial revealed that the proceeds from the Witcher Auction were deposited into the "farm account" and used to pay farming debt obligations.  Based on the amount of proceeds received from the sale, and the fact that the sale was conducted over three years prior to Jordan Hylle's bankruptcy case being filed, the Court finds this explanation sufficient to show how the proceeds from the sale of the Drills were used.

For these reasons, the Court finds that Jordan Hylle satisfactorily explained the loss of the Drills.  Farm Credit's claim under Section 727(a)(5) as to the Drills must be denied.

### (c)  *DMI Tigermate II Cultivator*

There was no dispute at trial concerning Farm Credit's security interest in the DMI Tigermate II Cultivator.  This piece of equipment was pledged as collateral to secure Loan 6137.  The evidence revealed that the DMI Tigermate II Cultivator was disposed of prior to Jordan Hylle's bankruptcy case.  Based on this evidence, the Court finds that Farm Credit met its burden of proving that a "loss of assets" occurred.

However, the Court finds Jordan Hylle has satisfactorily explained where the DMI Tigermate II Cultivator was sold, and how the proceeds of that sale were applied. At trial, David Hylle, Matthew Hylle, and Jordan Hylle all testified that the DMI Tigermate II Cultivator was sold at the Dewitt Auction. The evidence further revealed that the sales price for the cultivator was $3,500.00, and that the proceeds received from the Dewitt Auction were used to pay down the debt with Helena Chemical, which allowed farming operations to continue in 2018. The testimony was supported by the settlement sheet for the Dewitt Auction, which reflected that David Hylle Farms sold a "DMI Field Cultivator" for $3,500.00. In addition, David Hylle's handwritten note prepared postpetition provided that the DMI Tigermate II Cultivator was sold a couple of years prior to the bankruptcy by Dewitt Auction Company and proceeds were applied to a debt owed to Helena Chemical.

At trial, Farm Credit pointed out that the settlement sheet for the Dewitt Auction did not include a serial number for the "DMI Field Cultivator" that was sold. On this basis, they argued that Jordan Hylle failed to satisfactorily account for the DMI Tigermate II Cultivator that was pledged as collateral. The Court disagrees. At trial, Mr. Dewitt testified that there are several reasons a serial number may be excluded from a settlement sheet. These reasons include space limitations, time constraints, and the amount of information Dewitt Auction Company collected on the property. Moreover, the Court finds the preponderance of the evidence reveals that the "DMI Field Cultivator" sold at the Dewitt Auction was the DMI Tigermate II Cultivator pledged as collateral for Loan 6137.

The Court finds Jordan Hylle's explanation was sufficient to allow Farm Credit to investigate the loss of the DMI Tigermate II Cultivator and the proceeds from its disposition.[18]

---

[18] In addition to the DMI Tigermate II Cultivator, a Case 305 tractor was also sold at the Dewitt Auction. Based on this information, Farm Credit was able to locate the buyer of the tractor, Alex Moody, and confirm that the serial

*See Vilhauer*, 458 B.R. at 514–15 ("An important component in ascertaining the reasonableness of any explanation is its capacity for verification; that is, is the explanation sufficient to enable either the trustee or a creditor to properly investigate the circumstances surrounding the loss or deficiency." (quoting *Reed*, 310 B.R. at 370)).

For these reasons, the Court finds that Jordan Hylle satisfactorily explained the loss of the DMI Tigermate II Cultivator. Farm Credit's claim under Section 727(a)(5) as to this cultivator must be denied.

### (2) Matthew Hylle

As stated above, Matthew Hylle executed a security agreement pledging the Honey Bee Draper Header as collateral to secure repayment of Loan 1165. There was no dispute at trial concerning Farm Credit's security interest in this piece of equipment. Furthermore, at trial, the parties agreed that Matthew Hylle no longer retained an interest in the Honey Bee Draper Header. Therefore, the Court finds Farm Credit met its burden of proving that a "loss of assets" occurred.

However, the Court finds Matthew Hylle has provided a sufficient explanation as to the disposition of the Honey Bee Draper Header. Matthew Hylle testified that the Honey Bee Draper Header was sold at the July 2019 auction with BigIron Auctions. The testimony revealed that there were only two Honey Bee draper headers, and they were both sold at the July 2019 auction. The settlement sheet for the July 2019 auction confirms that two Honey Bee draper headers were sold by David Hylle Farms at the auction. The evidence further revealed that the proceeds from the July 2019 auction were used to pay debts. Although the record does not include specific documentation of how the proceeds were applied, the testimony revealed that the

---

number for the auctioned tractor did not match the serial number of the Disputed Tractor pledged to Farm Credit. Farm Credit was then able to call Mr. Moody as a witness to testify to this fact.

Hylles lost the land they farmed in April 2019, and after this loss, "companies called in notes" and demanded to be paid.  (I Tr. at 149).  The Court finds that this testimony, when coupled with David Hylle's handwritten note that the Honey Bee Draper Header was "sold to put on debt," provides this Court with sufficient evidence to conclude that the proceeds were used to pay debts associated with the farming operations.  In reaching this conclusion, the Court is also convinced that neither the sale of the Honey Bee Draper Header, nor the use of the proceeds, was done in an attempt to "hide" or "shield" assets from the estate.  *See Whitehead*, 483 B.R. at 910.

For all these reasons, the Court finds that Matthew Hylle satisfactorily explained the loss of the Honey Bee Draper Header.  Farm Credit's claim under Section 727(a)(5) as to the Honey Bee Draper Header must be denied.

In summary, in reviewing all the testimony and documentary evidence introduced at trial, and in judging the credibility of the witnesses, the Court finds the Defendants have reliably explained what happened to the assets at issue in this case.  The Court is convinced neither defendant has hidden assets from creditors or their bankruptcy estates.  The Defendants' explanations were corroborated by additional testimony and documentary evidence.  The Court finds the explanations satisfactory, and therefore concludes Farm Credit's claims under Section 727(a)(5) must be denied.

## VI.  Conclusion

For the reasons stated herein, the Court finds Farm Credit failed to establish that the debt owed to it by Jordan Hylle should be declared nondischargeable or that Jordan Hylle's discharge

should be denied.  Farm Credit's claims under Sections 523(a)(6)[19] and 727(a)(5) are DENIED.

A separate judgment will be entered in favor of Jordan Hylle in AP No. 3:20-ap-1022.

Likewise, for the reasons stated herein, the Court finds Farm Credit failed to establish

that the debt owed to it by Matthew Hylle should be declared nondischargeable or that Matthew

Hylle's discharge should be denied.  Farm Credit's claims under Sections 523(a)(6), (a)(4), and

727(a)(5) are DENIED.  A separate judgment will be entered in favor of Matthew Hylle in AP

No. 3:20-ap-1023.

**IT IS SO ORDERED.**

Phyllis M. Jones
United States Bankruptcy Judge
Dated:  04/21/2022

cc:    Mr. R. Bryant Marshall
       Mr. Joel Grant Hargis
       Ms. Emily J. Henson
       Mr. Lance Owens
       Mr. Charles Jordan Hylle
       Mr. Matthew Stephen Hylle

---

[19] Again, the Amended Complaint did not include a separate claim against Jordan Hylle under Section 523(a)(4), but Section 523(a)(4) was mentioned in the prayer for relief.  As stated in footnote 2, above, any claim against Jordan Hylle under Section 523(a)(4) was abandoned by Farm Credit at trial.